UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Honorable Patty Shwartz**  U.S. Post Office & Courthouse Bldg.
United States Magistrate Judge  Federal Square, Newark, NJ  07101
  (973) 645-6596

September 26, 2008

**LETTER OPINION & ORDER**

Al-Wahid Ali, pro se
#435650
Northern State Prison
P.O. Box 2300
Newark, NJ 07114

    **RE: AL-WAHID ALI v. DOC, CMS, ET AL.**
    **Civil Action No. 08-2425 (FSH)**

Dear Litigants:

The Court is in receipt of Al-Wahid Ali's ("plaintiff") request for appointment of pro bono counsel under 28 U.S.C. § 1915(e)(1), filed August 22, 2007.  For the reasons set forth below, the plaintiff's request is denied.

**BACKGROUND**

Plaintiff submitted a Complaint in the Superior Court of New Jersey, Law Division, Essex County on February 8, 2008 against the New Jersey Department of Corrections ("DOC"), Correctional Medical Services, Inc. ("CMS"), the Union County Jail, and the Monmouth County Jail.  In his Complaint, plaintiff claims that, between July 29, 1999 to the present, defendants failed to provide him with adequate medical treatment in connection with plaintiff's Hepatitis C illness.  Plaintiff alleges this conduct violates his Eighth Amendment right to be free from cruel and unusual punishment. See Docket Entry No. 2.

On May 16, 2008, CMS filed a Notice to remove the case to this Court.  On May 30, 2008, plaintiff filed an application for the appointment of pro bono counsel. See Docket Entry

No. 2. The application was denied without prejudice on June 10, 2008[1]. See Order, dated June 10, 2008. On June 11, 2008, Judge Hochberg ordered that the Complaint be dismissed with prejudice as to the DOC, the Union County Jail, and the Monmouth County Jail. See Order, dated June 11, 2008. On July 11, 2008, plaintiff filed a motion to amend his Complaint to add additional defendants, which was denied on July 16, 2008. See Order, dated July 16, 2008.

On August 22, 2008, plaintiff filed this application for the appointment of counsel. See Docket Entry No.19 ("App. for Counsel"). In his application, plaintiff argues that he is entitled to counsel because: (1) he cannot afford an attorney; (2) he does not possess the "lawyering skills", legal education, and resources necessary "for this type of complaint"; (3) he does not have the "ability to acquire the needed experts" to prosecute this case; and (4) he does not have the physical or mental capacity to represent himself, due to, among other things, "blood circulation problems", "numbness" in both legs, "neurological damage", "herniated spinal disks", "carpal tunnel syndrome", "short term memory loss", "post traumatic stress disorders", and "constant untreated pain...." See App. for Counsel at ¶¶ 2-8.

On September 5, 2008, defendant CMS filed a Letter Brief in Opposition to plaintiff's application for pro bono counsel. See Docket Entry No. 22 ("Brief in Opposition"). In this brief, CMS argues that plaintiff is not entitled to counsel because: (1) plaintiff has "failed to present any new basis for the assignment of pro bono counsel"; (2) plaintiff does not have a "constitutional or statutory right to the appointment" of counsel; (3) plaintiff has "demonstrated his ability to represent himself" and has a considerable amount of "prior litigation experience"; (4) the legal issues involved in this case are "clear and well-settled"; (5) the "constraints" on plaintiff due to his imprisonment are "the same or similar to those placed upon every other prisoner-plaintiff"; (6) the case "does not turn on credibility determinations, but rather on objectively verifiable medical evidence"; (7) plaintiff has not established the "need to retain an expert"; and (8) plaintiff's inability to retain and afford counsel does not by itself "warrant the appointment of counsel." See Brief in Opposition.

**DISCUSSION**

There is no constitutional or statutory right to appointed counsel for indigent civil litigants. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). District courts have broad discretion in determining whether the appointment of counsel is appropriate. 28 U.S.C. § 1915 (e)(1); Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). In considering a request for appointment

---

[1] The Honorable Faith S. Hochberg denied plaintiff's application because: (1) due to the early state of litigation, plaintiff had not demonstrated the complexity of legal issues, required fact investigation, or need for expert witnesses; and (2) plaintiff was able to proceed without counsel as he had presented "without the assistance of counsel a well-articulated and coherent Complaint." Opinion dated June 10, 2008. The Court also stated it would consider a renewed motion later in litigation when the complexity of legal issues or required factual or expert investigation becomes clear. Id.

of counsel, the Court must first assess "whether the claimant's case has some arguable merit in fact and law." Montgomery v. Pinchak, 294 F.3d 492, 498-99 (3d Cir. 2002) (citing Tabron, 6 F.3d at 155). If the applicant satisfies this threshold requirement, then the Court should consider the following factors:

> (1) the plaintiff's ability to present his case;
> (2) the difficulty of the particular legal issues;
> (3) the degree to which factual investigations will be necessary and the ability of the plaintiff to pursue an investigation;
> (4) the extent to which a case is likely to turn on credibility determinations;
> (5) whether the case will require testimony from expert witnesses; and
> (6) the plaintiff's capacity to retain counsel on his own behalf.

Tabron, 6 F.3d at 156-57. The decision to appoint counsel "must be made on a case-by-case basis." Id. Assuming for the purposes of this application that plaintiff's claims have merit, the Court must apply the Tabron factors to determine if appointed counsel is warranted.

First, the Court must consider whether or not the plaintiff has the ability to present his own case. Generally, courts consider the plaintiff's education, literacy, prior work experience, prior litigation experience, and the restraints placed upon the plaintiff by virtue of his confinement. Id. at 156. This also may include consideration of the availability of equipment such as typewriters, photocopiers, telephones and computers, id., as well as his ability to file motions and seek relief. Montgomery, 294 F.3d at 501. Here, it appears the plaintiff is able to present his case. His submissions are coherent and understandable, demonstrating the plaintiff's ability to express his claims and the factual basis for them. See App. for Counsel. In particular, plaintiff's proposed Amended Complaint demonstrates his ability to understand numerous legal intricacies including jurisdiction, venue, motion practice, and many state and federal causes of action. See Docket No. 16; Docket No. 17. Plaintiff argues that he is unable to present his own case due to the fact that he does not own a typewriter and must have someone assist him in his writing. See App. for Counsel at ¶ 8. Plaintiff, however, has recently filed a number of typewritten submissions. See Docket No. 13; Docket No. 16; Docket No. 17. Additionally, plaintiff's physical health and mental conditions do not appear to prevent plaintiff from presenting his claims and any limitation on plaintiff's ability to litigate his claims as a result of his medical condition can be addressed through an enlarged pretrial schedule. Lastly, according to the Court records, plaintiff has filed ten other lawsuits in this Court, which illustrates the legal experience plaintiff possesses.[2] His vast previous experience in litigating his claims will no doubt serve him in pursuing these claims, and thus the plaintiff appears to have the ability to litigate these claims. In short, the totality of the circumstances indicate that the plaintiff is fully capable of adequately presenting his case which militates against appointment of counsel.

---

[2] Plaintiff has filed nine other cases. See Civil Nos. 93-1221, 93-1222, 94-1536, 00-1820, 00-1821, 00-2449, 00-2580, 08-70, 08-2424, and was given counsel only in the first case he filed. Civil No. 93-1221, Docket No. 19. Thus, since his first filing, he has received experience in handling cases in federal court.

The second factor for consideration is the complexity of the legal issues presented in the case. The Third Circuit has explained that "where the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." Tabron, 6 F.3d at 156 (citing to Maclin v. Freake, 650 F.2d 885, 889 (7th Cir. 1981)). The plaintiff's claim alleges a violation of his Eighth Amendment rights for failure to provide adequate medical treatment during his incarceration. See App. for Counsel at ¶ 7. This claim does not present particularly complex legal issues. In Romano v. Brown, the plaintiff, a prisoner, brought a similar Eighth Amendment claim against the DOC and CMS for failure to provide adequate medical treatment for Hepatitis C. Romano v. Brown, Civil No. 04-4346, 2006 WL 2376913, *1 (D.N.J. Aug 16, 2006). The District Court reviewed the Tabron factors and concluded that appointment of counsel was inappropriate. Id. at *5. In regard to the complexity of legal issues, the Court held that the case "involve[s] longstanding and well-established law under 42 U.S.C. § 1983 including . . . an Eighth Amendment claim of Deliberate Indifference to Medical Need." Id. Similarly, in Tabron, where the plaintiff brought a claim against prison officials pursuant to 42 U.S.C. § 1983, involving violations of the plaintiff's rights under the United States Constitution, the appellate court held that "the legal issues in this case do not appear to be complex, and the applicable law is clear." 6 F.3d at 158. Thus, as established in both Tabron and Romano, plaintiff's Eighth Amendment claim does not present complex legal issues to warrant appointment of pro bono counsel.

The third and related factor for consideration is the degree to which a factual investigation will be necessary and the ability of the plaintiff to pursue an investigation. In determining plaintiff's ability to adequately pursue this factual investigation, "the court may . . . consider the extent to which prisoners and others suffering confinement may face problems in pursuing their claim [such as] where the claims are likely to require extensive discovery and compliance with complex discovery rules." Tabron, 6 F.3d at 156 (citing Maclin, 650 F.2d at 889). Plaintiff claims that limited legal access to the law library prevents him from effectively pursuing his case. See App. for Counsel at ¶ 3. Furthermore, the plaintiff argues that his "case involves extensive factual investigation, as medical records extend over the decade that [he has] been incarcerated . . . . " See id. at ¶ 8. However, plaintiff has not established that he has ever been, or will be, denied access to either the library or his medical records. The plaintiff's ability to represent himself thus far indicates that he is able to access the legal resources needed for representation. Plaintiff has been able to state with clarity the illnesses from which he suffers and the treatment that he has failed to receive. See App. for Counsel. Additionally, Plaintiff has not "demonstrated the need for extensive discovery above and beyond his medical files." Romano, 2006 WL 2376913, at *5. Moreover, plaintiff will be able to investigate his case using the discovery tools made available through the Federal Rules of Civil Procedure, which will provide him with a mechanism to collect the medical records he needs. Moreover, plaintiff's situation is no different from other prisoners who are incarcerated and pursuing civil law claims. Even though plaintiff is imprisoned, he nevertheless has access to a legal library and the ability to obtain discovery needed to pursue his claim. Thus, this factor weighs against the need for pro bono counsel.

Fourth, the Court must consider whether or not a case is likely to turn on credibility determinations. See Tabron, 6 F.3d at 156. With respect to "this factor, courts should determine whether the case was solely a swearing contest." See Parham, 126 F.3d at 460. At the present

time, plaintiff's case does not indicate a reliance on credibility determinations. The assertion of failure to provide adequate medical treatment most likely will be decided based on objective evidence, namely medical records. Although there may eventually be factual disputes between the parties that will require an assessment of credibility, there is no indication that this is certain or dispositive. Therefore, this factor weighs against the plaintiff's need for pro bono counsel.

Fifth, the Court may appoint counsel where the case will require expert testimony. Tabron, 6 F.3d at 156. Arguably, the plaintiff here may require the assistance of an expert to fully explain to a jury the meaning behind plaintiff's condition, including an examination of plaintiff's medical records and the standard of care required for a person in his position. See Montgomery, 294 F.3d at 504 ("expert testimony is necessary when the seriousness of the injury or illness would not be apparent to a lay person"). Plaintiff, however, has not yet established that an expert is indispensable to his case. An expert is not necessarily needed to explain to a jury the ramifications resulting from defendant's alleged "falsif[ication] of diagnostic reports" and failure to give plaintiff "the proper prescribed medications. . ." See App. for Counsel at ¶¶ 6-8. Therefore, even though expert testimony may eventually be required depending on the kind of medical attention the plaintiff received, there is no indication thus far that complex medical disputes will arise in connection with this claim.

Sixth, plaintiff's inability to afford counsel alone is an insufficient reason to appoint counsel. See Stevens v. Lopez, Civil No. 06-3697, 2006 U.S. Dist. LEXIS 74610, *6 (D.N.J. Oct. 12, 2006) (citations omitted). Plaintiff also contends that he does not have the ability to pay for such necessities as legal postage, envelopes, and the copying costs necessary to pursue his case. The lack of money to pay these expenses is not a reason to appoint an attorney and other avenues can be considered to address this problem, such as an order allowing plaintiff to mail one copy of his documents to the Clerk of the Court for electronic filing, which would make the documents available to the defendants and reduce postage and copying expenses.[3] Moreover, plaintiff has been able to effectively pursue his claim thus far. Thus, his indigency alone is not a basis to appoint counsel.

## CONCLUSION

For all these reasons, the Court denies plaintiff's application for the appointment of pro bono counsel.

**SO ORDERED**.

s/Patty Shwartz
United States Magistrate Judge

---

[3] If such an order is desired, it must be requested together with an affidavit explaining the costs for postage and copying and plaintiff's access to funds.