NOT FOR PUBLICATION                                          CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AL-WAHID ALI, | : |
| | : Hon. Faith S. Hochberg |
| Plaintiff, | : |
| | : Civil Case No. 08-2425 |
| v. | : |
| | : **OPINION & ORDER** |
| CORRECTIONAL MEDICAL SERVICES, INC., *et* | : |
| *al*., | : Date: August 31, 2010 |
| | : |
| Defendants. | : |
| | : |

## I.  INTRODUCTION

Plaintiff Al-Wahid Ali ("Plaintiff") is a prisoner committed to the custody and care of the

New Jersey Department of Corrections (the "NJ DOC").  On February 6, 2008, Plaintiff,

appearing *pro se*, filed a civil rights Complaint in the New Jersey Superior Court against the NJ

DOC, Union County Jail, Monmouth County Jail, and Correctional Medical Services, Inc.

("CMS"), an entity that provided medical services to inmates, such as Plaintiff, through its

independent contractors pursuant to a contract with the NJ DOC.  CMS removed the Complaint

to this Court on May 16, 2008.  The Court subsequently screened the Complaint pursuant to 28

U.S.C. § 1915 and dismissed Plaintiff's claims against all Defendants except CMS.[1]

On November 19, 2008, Plaintiff was granted leave to file an Amended Complaint adding

new Defendants.  Plaintiff's Amended Complaint named several administrators within the prison

system – George Hayman, Commissioner of the NJ DOC, Richard Cevasco, Assistant Director of

---

[1]  The Court dismissed with prejudice the NJ DOC because it is immune under the
Eleventh Amendment, and dismissed with prejudice Union County Jail and Monmouth County
Jail because they are not "persons" for purposes of Section 1983 liability. [Docket No. 6.]

Health Services for the NJ DOC, Thomas Ferrell, Supervisor of Health Services for the NJ DOC,

and Bruce Hauck, Administrator of the Medical Department at Northern State Prison (together,

the "Administrator Defendants") – as well as Charmaine Ifill, a CMS administrator at Northern

State Prison, and John Hochberg, M.D., and Beverly Weber, M.D., two physicians who treated

Plaintiff.  Plaintiff's Amended Complaint alleges that Defendants violated his Eighth

Amendment rights by denying him adequate medical care, including a liver transplant.  The

Amended Complaint also alleges state law claims for negligence, intentional infliction of

emotional distress, and violations of the New Jersey Constitution based on this denial of medical

care.

Discovery proceeded for approximately six months and included the deposition of

Plaintiff.  At the conclusion of discovery, Defendant CMS moved for summary judgment on all

claims against it.  On September 11, 2009, the Court granted that motion in part, entering

summary judgment in favor of CMS on the federal law claims.  The Court declined to exercise

supplemental jurisdiction over the remaining state law claims against CMS; those claims were

dismissed without prejudice to Plaintiff's right to reinstate them in state court.  [Docket No. 83.]

The Court also dismissed without prejudice all claims against Defendants Ifill, Hochberg, and

Weber pursuant to Federal Rule of Civil Procedure 4(m) for failure to timely effect service of

process.  [Docket No. 79.]

Now before the Court is the Administrator Defendants' motion to dismiss, or in the

alternative, for summary judgment.  [Docket No. 143.]  Because discovery in this matter is

complete and the Administrator Defendants rely on matters outside the pleadings, the motion will

be treated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

The Court has considered the motion on the papers pursuant to Federal Rule of Civil Procedure
78.

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will
be granted when the evidence contained in the record, including "the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled to a
judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   In
determining whether there are disputes of material fact, the Court must view the record in the
light most favorable to the nonmoving party and draw all inferences in that party's favor.  *Peters
v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).

The party seeking summary judgment bears the initial burden of production.  *Celotex
Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  This burden requires the moving party to establish
either that there is no genuine issue of material fact and that the moving party must prevail as a
matter of law, or demonstrate that the nonmoving party has not shown the requisite facts relating
to an essential element of an issue on which it bears the burden.  *Id.* at 322-23.  Once the party
seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving
party.  To avoid summary judgment, the opposing party "must do more than simply show that
there is some metaphysical doubt as to material facts."  *Matsushita Elec. Indus. Co. v. Zenith
Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party must demonstrate facts supporting
each element for which it bears the burden, thus establishing the existence of a genuine issue of
material fact justifying trial.  *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n.2 (3d Cir. 1999); *see also*

*Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991) (observing that non-movant's effort to

defeat summary judgment may not "rest upon mere allegations, general denials, or . . . vague

statements").

Due to an understandable difference in legal sophistication, a complaint drafted by a *pro*

*se* litigant must be held to a less exacting standard than a complaint drafted by trained counsel.

*Haines v. Kerner*, 404 U.S. 519 (1972).  However, "while *pro se* complaints are entitled to liberal

construction, the plaintiff must still set forth facts sufficient to survive summary judgment."

*Moore v. Correctional Med. Servs.*, Civ. No. 05-3525, 2006 WL 1478863, at *3 (D.N.J. May 26,

2006) (citing *Shabazz v. Odum*, 591 F. Supp. 1514 (M.D. Pa. 1984)).

### III.  FACTUAL BACKGROUND

The undisputed facts of this case were set forth in detail in the Court's September 11,

2009 Opinion and Order, and are incorporated herein by reference.  The Court assumes

familiarity with that Opinion and Order; however, the following undisputed facts bear repeating:

Upon intake to New Jersey State Prison in September 2002, the infirmary diagnosed

Plaintiff with Hepatitis B and C.[2]  After undergoing certain testing, including a liver biopsy, and

being evaluated by physicians at the prison and a gastrointestinal consultant, Plaintiff received a

48-week course of drug therapy for his Hepatitis C.  During this course of treatment, Plaintiff

was seen periodically for follow-up examinations by CMS physicians.  On October 5, 2004,

Plaintiff's viral load was re-checked and found to be elevated, indicating a non-response to the

drug therapy.

In early 2005, Plaintiff visited the prison's infirmary indicating he needed to see a liver

_____

[2]  Plaintiff testified at his deposition that he has had Hepatitis C since he was fourteen
years old.

specialist.  On April 20, 2005, Plaintiff saw such a specialist, who confirmed Plaintiff's non-response to drug therapy and noted that no other treatment options were available.  Thereafter, doctors at the prison continued to monitor Plaintiff's liver function, administered periodic lab tests, and continued to provide Hepatitis C education.

In April 2006, Plaintiff filed for medical clemency claiming he required a liver transplant. On May 29, 2006, a physician at South Woods State Prison evaluated Plaintiff, and found that he did not have a terminal condition, his liver function was fair, and a liver transplant was unnecessary.  Plaintiff was reevaluated on May 30, 2006 by a second physician, who similarly found that Plaintiff was clinically stable, with no evidence of decompensated liver disease.

In October 2006, Plaintiff visited the prison's infirmary expressing concern over his liver function and stating his desire to be placed on a liver transplant list.  New lab work was ordered. In February 2007, the prison's clinic ordered a specialist consultation to reevaluate Plaintiff's Hepatitis C treatment options.  A physician at Cooper Hospital reviewed Plaintiff's medical records on March 12, 2007 to assess the possibility of retreating Plaintiff's Hepatitis C.  The physician noted that Plaintiff had been prescribed the appropriate doses of the drug therapy. Retreatment was not recommended.

On July 18, 2007, Plaintiff again visited the prison's clinic requesting a liver transplant. Plaintiff was referred to Dr. John Hochberg, who found no evidence of decompensated liver disease, but referred Plaintiff to a gastrointestinal specialist for education on end-stage liver disease treatment and candidacy for liver transplantation.  Plaintiff saw that specialist, Dr. Gersten, on August 1, 2007.  Dr. Gersten could not complete an evaluation because he had not been provided with Plaintiff's recent medical records, but he noted there were no overt signs of

end-stage liver disease based on Plaintiff's overall physical state and lack of jaundice.

On August 8, 2007, Plaintiff again visited the infirmary requesting a liver transplant.  He

was seen by Dr. Hochberg, who found no signs of liver failure.  Dr. Hochberg noted that Plaintiff

seemed to be "looking for someone to support his need to have [a] liver transplant."  Dr.

Hochberg nonetheless referred Plaintiff to the Liver Center at the University of Medicine and

Dentistry of New Jersey for an evaluation of Plaintiff's candidacy for a liver transplant.

On March 4, 2008, Plaintiff had an ultrasound performed, which revealed no cirrhosis or

hepatocellular carcinoma.  Plaintiff was evaluated at the Liver Center on May 8, 2008, and was

found to have no evidence of cirrhosis or hepatic decompensation.  The Liver Center's physician

did not recommend a liver transplant.

### III.  DISCUSSION

**A. Counts X, XIII, and XIV: Deliberate Indifference Claims**

In Counts X, XIII, and XIV, Plaintiff seeks to enforce his Eighth Amendment right to

adequate medical care.[1]  *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Rouse v. Plaintier*,

---

[1] Plaintiff seeks to enforce this right through 42 U.S.C. § 1983, which is "not itself a source of substantive rights," but instead a "method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The statute authorizes suits against "persons."  It is well settled that state officials, acting in their official capacities, are not "persons" subject to liability within the meaning of the statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996).  Here, the Administrator Defendants were all employees of the State's Department of Corrections.  Accordingly, the claims against them in their official capacities for monetary damages shall be dismissed.

6

182 F.3d 192 (3d Cir. 1999).  To succeed on this claim, Plaintiff must demonstrate that the

Administrator Defendants acted with deliberate indifference to his serious medical needs.

*Estelle*, 429 U.S. at 104.  To do so, he must make: (1) an "objective" showing that the

deprivation of care was "sufficiently serious," or that the result of the denial was sufficiently

serious; and (2) a "subjective" showing that the Defendants acted with a "sufficiently culpable

state of mind."  *Thomas v. Dragovich*, 142 F. App'x 33, 36 (3d Cir. 2005) (citing *Wilson v.*

*Seiter*, 501 U.S. 294, 298 (1991) and *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002)).

In addressing the "subjective" prong, the Third Circuit has described "deliberate

indifference" as lying "somewhere between the poles of negligence at one end and purpose or

knowledge at the other."  *Thomas*, 142 F. App'x at 36 (quoting *Farmer*, 511 U.S. at 836).   For

example, deliberate indifference has been found where a prison official: "(1) knows of a

prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary

medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving

needed or recommended medical treatment."  *Rouse*, 182 F.3d at 197; *see also Monmouth*

*County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (finding that

when reasonable requests for medical treatment are ignored and such denials subject the inmate

to "undue suffering or the threat of tangible residual injury," deliberate indifference is shown).

An inmate's "disagreement with a doctor's professional judgment" does not rise to a

constitutional violation.  *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

Here, Plaintiff contends that he did not receive adequate medical care for his Hepatitis C,

complaining specifically that prison physicians wrongfully refused to provide him a liver

transplant.  Plaintiff argues that the Administrator Defendants, none doctors but all in supervisory

7

positions within the NJDOC, are liable for this deprivation because they knew of the "Eighth

Amendment wrong to Plaintiff,"[2] but failed to "do anything to stop or fix it." *Id.* at 12; *see also*

*id.* at 10 ("Defendants Hayman, Cevasco, Farrell, and Hauck have failed to address Plaintiff's

issues regarding treatment for his serious medical needs.").

This theory of liability against the Administrator Defendants is not supported by genuine

facts, nor does it have any legal basis. In *Durmer v. O'Carroll*, a case similar to the one at bar,

the Third Circuit was presented with an appeal from a district court's grant of summary judgment

on an inmate's deliberate indifference claim against medical and non-medical personnel. In

affirming the lower court's dismissal of the claim against the non-medical personnel, the Third

Circuit held that because the defendants were not physicians, they could not be "considered

deliberately indifferent simply because they failed to respond directly to the medical complaints

of a prisoner who was already being treated by the prison doctor."[3] *Id.* The Third Circuit

reapplied this holding in *Spruill v. Gillis*, in which it decided that "absent a reason to believe (or

actual knowledge) that prison doctors are mistreating (or not treating) a prisoner, a non-medical

prison official cannot be found liable for deliberate indifference." 372 F.3d 218, 236 (3d Cir.

2004).

Here, Plaintiff's voluminous medical records show that Plaintiff was under the frequent

and continuous care of prison physicians who timely responded to Plaintiff's concerns about his

Hepatitis C, provided him with a course of drug therapy, had him evaluated by specialists

---

[2] Plaintiff alleges that the Administrator Defendants "were notified about [his] condition" through a "substantial number" of letters and administrative remedy forms." Opp. 10.

[3] The Court also noted that "respondeat superior is, of course, not an acceptable basis for liability under § 1983." *Durmer*, 991 F.2d at 69 n.14 (citing *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)).

multiple times for liver transplantation candidacy, and serially monitored his liver function

through blood tests, urinalyses, biopsies, and ultrasounds.  From this record, it is abundantly clear

that any complaints that Plaintiff may have submitted to the Administrator Defendants about his

condition were adequately addressed by trained medical professionals.  Further, like defendants

*Durmer* and *Spruill*, the Administrator Defendants are not physicians and are therefore held to a

standard requiring that they take action only if they had reason to believe that the prison

physicians were mistreating or not treating Plaintiff.  Here, Plaintiff's extensive treatment history

would not give the Administrator Defendants any reason whatsoever to believe that prison

physicians were depriving Plaintiff of care, and Plaintiff has adduced no evidence of

mistreatment.[4]  Accordingly, no reasonable jury could find that the Administrator Defendants

were deliberately indifferent to his medical needs.  *See Casilla v. New Jersey State Prison*, Civ.

No. 05-4590, 2009 WL 2148012, at \*8 (D.N.J. July 16, 2009), *aff'd*, 2010 WL 1999014 (3d Cir.

May 20, 2010) (non-medical personnel "cannot be held to be deliberately indifferent merely

because they did not respond to the medical complaints of a prisoner who was already being

treated by the prison medical staff"); *Glazewski v. Corzine*, No. 06-4107, 2009 WL 5220168, at

\*9 (D.N.J. Dec. 31, 2009) (granting summary judgment in favor of non-medical personnel where

plaintiff was under continuous medical care); *Moore*, 2006 WL 1478863, at \*6 (same).

**B.  Counts XII and XIII:  Plaintiff's State Law Claims**

Plaintiff alleges two state law claims against the Administrator Defendants:  in Count XII,

---

[4]  Plaintiff complains that it was the practice of prison physicians to send patients, such as Plaintiff, to specialists without medical records necessary to make a sound diagnoses.  Opp. 3-4; *see also* Am. Compl. ¶¶ 6-8.  However, Plaintiff can point only to a single comment by Dr. Gersten that he did not have adequate records to complete a full evaluation of Plaintiff.  An isolated failure such as this is insufficient to establish a constitutional violation, particularly in light of the fact that other consultants, such as those at the Liver Center, had proper lab results to evaluate Plaintiff's condition.

he alleges a claim for intentional infliction of emotional distress, and in Count XIII, he claims

violations of the New Jersey Constitution.  The Court will not exercise supplemental jurisdiction

over these state law claims as against the Administrator Defendants in light of the impending

dismissal of the federal claims.  *See* 28 U.S.C. § 1367(c)(3) (authorizing same).

### IV.  CONCLUSION

For the foregoing reasons, **IT IS** on this 31st day of August 2010,

**ORDERED** that the motion for summary judgment filed by Defendants George Hayman,

Richard Cevasco, Thomas Ferrell, and Bruce Hauck [Docket No. 143] is **GRANTED** with

prejudice as to Counts X, XIII (with respect to the federal constitutional violations alleged

therein), and XIV; and Counts XII and XIII (with respect to the state constitutional violation set

forth therein) are **DISMISSED** without prejudice in light of the Court's decision not to exercise

supplemental jurisdiction; and it is further

**ORDERED** that this case is **CLOSED**.

/s/ **Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.